UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATHISH A.,[1]<br><br>   Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>   Defendant. | Case No. 20-cv-05575-TSH<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 28, 38 |

## I.   INTRODUCTION

Plaintiff Sathish A. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 28. Defendant cross-moves to affirm. ECF No. 38. Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.[2]

## II.   PROCEDURAL HISTORY

On November 19, 2015, Plaintiff filed an application for Social Security Disability Insurance and Supplemental Security Income benefits with a disability onset date of April 1, 2014. AR 505-15. Plaintiff alleged disability due to eye problems, gum disease, anemia, rheumatoid

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 8, 10, 12.

arthritis, vitamin D deficiency, hyponytrimia, fatigue, depression and alcohol related issues. AR 279-87, 307-15, 542, 581. The application was initially denied on March 4, 2016 and again on reconsideration on May 2, 2017. AR 279-87, 253-65. An Administrative Law Judge ("ALJ") held hearings on December 5, 2017, May 15 and November 29, 2018, and August 27, 2019 and issued an unfavorable decision on January 8, 2020. AR 16-48. The Appeals Council denied Plaintiff's request for review on June 24, 202. AR 1-6. Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

Plaintiff raises three issues on appeal: (1) the ALJ's finding that Plaintiff's substance abuse was material is not supported by evidence; (2) the ALJ did not identify Plaintiff's mental impairments independent of his alcohol abuse; and (3) the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's statements.

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (simplified). It means "more than a mere scintilla, but less than a preponderance" of the evidence. *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its own judgment for that of

2

the ALJ." *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since April 1, 2014. AR 22.

3

1    At step two, the ALJ decides whether the claimant's impairment or combination of
2    impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the
3    claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148
4    (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.
5    20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe
6    impairments: idiopathic myopathy, keratitis Sicca (dry eye syndrome), major depressive disorder,
7    alcohol abuse disorder.  AR 22.

8    At step three, the ALJ evaluates whether the claimant has an impairment or combination of
9    impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the
10   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings
11   describe impairments that are considered "to be severe enough to prevent an individual from doing
12   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective
13   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).
14   "For a claimant to show that his impairment matches a listing, it must meet all of the specified
15   medical criteria.  An impairment that manifests only some of those criteria, no matter how
16   severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a
17   claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent
18   to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering
19   age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff
20   did not have an impairment or combination of impairments that meets the listings.  AR 23.

21   If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses
22   the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do
23   despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to
24   perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,
25   that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do
26   it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can
27   perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ
28   determined Plaintiff has the RFC to

4

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift or carry 20 pounds occasionally and 20 pounds frequently. There are no restrictions in standing, walking, or sitting. He can never climb ladders, ropes, or scaffolding; frequently climb ramps or stairs. He can frequently balance, stoop, crawl, crouch, or kneel. Because of dry eyes he needs to stop visual activity every 3 hours for 15 minutes to apply eye drops and wait for eye drops to take effect. The claimant cannot tolerate exposure to unguarded heights or moving mechanical parts. He should avoid even moderate exposure to extremes of heat, cold, or vibrations. He is cognitively capable of simple repetitive task, but not able to maintain attention to job duties for a continuous 2-hour period; cannot on a consistent basis adapt to changes in job duties.

AR 23-24. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work or any other work with his substance abuse issues. AR 27-28.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4] *Id.*

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v.*

Here, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform. AR 28. However, the ALJ additionally found if Plaintiff stopped his substance abuse, his mental impairments would no longer be severe. *Id.* The ALJ assessed the same RFC without the non-exertional limitations without Plaintiff's substance abuse issues. AR 34. The ALJ further found that if Plaintiff stopped his substance abuse issues, he could perform his past relevant work. AR 37-38. As such, the ALJ found that substance use disorder was a contributing material factor because Plaintiff would not be disabled if he stopped his substance abuse, but if he stopped, he would not be disabled from his alleged onset date through the date of the decision. AR 38.

**B.     Whether the ALJ's Finding that Plaintiff's Substance Abuse was Material is Supported by Evidence**

### 1.     Drug Addiction and Alcoholism

If, considering all of the claimant's medically determinable impairments, there is a determination that the claimant is disabled, and there is medical evidence showing drug addiction and alcoholism ("DAA"), then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled. 20 C.F.R. § 404.1535. The Social Security Act provides that a claimant "shall not be considered disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's

*Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

6

1    remaining limitations are disabling, then the claimant's DAA is not a material contributing factor
2    to the determination of disability, and the claimant is disabled, independent of his or her DAA.
3    *See* 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). The claimant bears the burden of proving
4    that his substance use is not a material contributing factor to his disability. *Parra*, 481 F.3d at
5    748.

### 2.    Materiality of Plaintiff's Alcohol Abuse

After finding that Plaintiff's impairments were severe enough to be disabling when considering his alcohol abuse, the ALJ determined his substance use was a material, contributing factor to this determination. AR 37-38. As such, the ALJ concluded he was not disabled and therefore denied benefits. AR 38.

Plaintiff bears the burden of demonstrating that his alcohol use was not a material contributing factor to a finding of disability. *See* 20 C.F.R. § 404.1535; *Parra*, 481 F.3d at 748. The relevant inquiry is whether his disabling impairments would remain if he stopped his alcohol use. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). Plaintiff contends the ALJ improperly analyzed the materiality of his alcohol use for two reasons. First Plaintiff argues the ALJ did not provide clear and convincing reasons to give his treating physicians' opinions little weight. Pl.'s Mot. at 3-6. Second, he argues the ALJ gave his treating psychiatrist and psychotherapists' opinions little weight without sufficient explanation. AR 6-10.

For claims filed before March 27, 2017, such as Plaintiff's, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). As such, the ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of a treating physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Even where an treating physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record. *Garrison*, 759 F.3d at 1012 (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th

7

Cir. 1998). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). Social Security regulations provide that, when a treating source's opinions are not given controlling weight, an ALJ must apply the factors in 20 C.F.R. § 404.1527(c)(2)(i-ii) (length of treatment relationship and the frequency of examination; nature and extent of the treatment relationship) and (c)(3-6) ("supportability," consistency, specialization, and other factors that tend to support or contradict the opinion) in determining how much weight to give each opinion. *Id.* at 1012, n.11.

The "substantial evidence" standard requires an ALJ to "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725. Conclusory statements by the ALJ are insufficient; she "must set forth her own interpretations and explain why they, rather than the doctors', are correct." *Id.* An ALJ errs if she "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

In his decision, the ALJ gave limited weight to the opinions of Plaintiff's treating psychiatrist and two treating psychotherapists, who found Plaintiff's impairments predated substance abuse and continued when he was sober. Anna Fiskin, M.D., who was Plaintiff's treating psychiatrist for two-and-a-half years, indicated that Plaintiff had marked impairments of activities of daily living, he was unable to sustain social functioning, he could follow directions but had difficulty staying on task, and he was unable to maintain a regular schedule. AR 1782, 1854-57. Dr. Fiskin noted that Plaintiff's symptoms predated substance abuse and continued to be severely depressed when sober. AR 1857. Her evaluation concludes:

> [Claimant] is greatly impaired by his depression, with insomnia, low energy, anhedonia, poor concentration, hopelessness, helplessness, and suicidal ideation. He had several inpatient hospitals stays in the past year due to suicidal ideation with plan. His condition impairs his concentration, ability to interact with others since he isolates, and ability to consistently participate in activities. [Claimant's] depressive symptoms predated substance use and he continues to be

       severely depressed when sober.

*Id.*  The ALJ found that this opinion was reasonable when factoring in Plaintiff's substance abuse disorder but carried limited weight notwithstanding the effects of substance abuse.  AR 24.  The ALJ noted that Dr. Fiskin's own treatment records indicate that when Plaintiff was medically compliant, he denied depression, volunteered at an animal shelter, and played volleyball.  AR 24, 3043-55.  However, as noted above, when a treating source's opinions are not given controlling weight, the ALJ must apply the factors in 20 C.F.R. § 404.1527(c)(2)(i-ii) (length of treatment relationship and the frequency of examination; nature and extent of the treatment relationship) and (c)(3-6) ("supportability," consistency, specialization, and other factors that tend to support or contradict the opinion) in determining how much weight to give each opinion.  Here, the ALJ did not discuss any of these factors except to conclude Dr. Fiskin's opinion was inconsistent.

       The ALJ also disregard the opinion of Plaintiff's treating psychotherapist, Ernesto Villanova, MFT, whose evaluation covers Plaintiff's eight months of treatment from January 24, 2019 to October 7, 2019.  Villanova, who treated Plaintiff once a week, concluded that Plaintiff's mental limitations predate his alcohol use.  AR 4443.  Mr. Villanova noted that Plaintiff "has been clean for over 30 days and there is evidence that sxs are still fully present but are not exacerbated."  *Id.*  He further notes: "We have seen a minor decrease in sxs such as anhedonia, avolition, fatigue and general feeling of malaise.  Pt continues to exhibit self-loathing, lack of concentration and feelings of inadequacy, and lack of self-worth.  Diagnoses: Major depressive disorder severe."  AR 4441-44.  The ALJ found Mr. Villanova's opinion "carries limited weight.  He suggested no limitation in understanding, remembering, or carrying out information; mild limitation in interacting with others; marked limitation in concentration, persistence, and pace; marked limitation in adaptation; and extreme limitation in the ability to adapt of manage oneself."  AR 24.  However, once again, the ALJ did not discuss the § 404.1527 factors.

       The ALJ also disregarded the opinion of another of Plaintiff's treating psychotherapist, Chad Tynan, LMFT, whose evaluation covers Plaintiff's treatment from March 15, 2018 to July 25, 2019.  Mr. Tynan found that

> in the absence of alcohol, I have observed [Plaintiff's] mental health symptoms markedly impair his functioning across multiple life

9

>domains.  Though he is able to retain information, he is often unable to follow through with tasks due to depressed mood, fatigue, and difficulty concentrating.  The aforementioned symptoms lead him to isolate socially and significantly impaired social functioning.

AR 4446.  In August 2019, Mr. Tynan indicated that Plaintiff was markedly impaired in multiple life domains and his symptoms remained after periods of use.  AR 4446.  The ALJ found that "consistent with the findings regarding Mr. Villanova and Dr. Fiskin's assertion that the claimant's symptoms persist in periods of sobriety, Mr. Tynan's suggestion that the claimant's symptoms endure despite sobriety is not support or consistent with the medical evidence of record."  AR 24.  However, as with Dr. Fiskin's and Mr. Villanova's opinions, there is no indication the ALJ considered the § 404.1527 factors.

As noted above, to determine whether Plaintiff's DAA is material, the ALJ must determine whether Plaintiff would still be found disabled if he stopped using drugs or alcohol.  *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra*, 481 F.3d at 746-47; *Sousa*, 143 F.3d at 1245.  Here, the ALJ gave cursory reasons for rejecting the opinions of Plaintiff's treating psychiatrist and two treating psychotherapists, who found Plaintiff's impairments predated substance abuse and continued when he was sober.  In support of his decision, the ALJ gave "great weight" to the opinion of David Peterson, Ph.D, who testified at the May and November 2018 hearings.  AR 32.  However, Dr. Peterson did not treat or even examine Plaintiff, and he testified that he did not review the entire record.  AR 102.  Dr. Peterson acknowledged the limitations of his opinion:

>So, your honor, when we have such variation in the record and multiple episodes of decompensation, and a lack of clarity of abstinence, and a lack of clarity of medication compliance, sometimes just having good objective testing helps us get right to the criteria without having to worry about some of those other things. . . .  But it would be important for us to get something in the record from the primary treating psychiatrist that the alcohol use disorder is in remission, and that way we can just focus on the major depressive disorder and know that it's not being compounded by substances and then, you know, get an objective measure . . . .

AR 110.  To clarify, the ALJ asked "so . . . you don't feel that the record is clear enough for you to express an opinion as to claimant's limitations, either with a continuing alcohol binge drinking or absent - - if the problem is in remission, is that it?"  AR 111.  Dr. Peterson responded:

10

> At this point, your honor, I can say that the record supports a chronic alcohol problem and medication compliance issues and 1204 C1 and 2 would be relevant but would be exacerbated by noncompliance and alcohol use, and so, I couldn't say it was exclusively due to the major depressive disorder, but I'm confident in saying the record is showing multiple hospitalizations, but unfortunately those hospital contacts are highlighting not just the depression, but the stopping medication and drinking alcohol.

*Id.* The record shows that Dr. Peterson based his decision on only part of the record and that he believed further testing was appropriate. This does not contradict the opinions of Dr. Fiskin and psychotherapists Villanova and Tynan, whose reports came from their longitudinal study of Plaintiff's psychological condition both when sober and when intoxicated.

Recognizing the difficulty in evaluating disability cases with co-occurring DAA and mental disorders, the Ninth Circuit has distinguished "between substance abuse contributing to the disability and *the disability remaining after the claimant stopped using drugs or alcohol*" and has found that "[j]ust because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too." *Sousa*, 143 F.3d at 1245 (emphasis in original). An ALJ's finding that the substance use is material must be supported with evidence in the record that is fully developed and that establishes that the claimant's co-occurring mental disorder would improve to the point of nondisability in the absence of DAA. Social Security Ruling, SSR 13-2p.; Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 78 FR 11939-01. To this end, "a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—with or without treatment for DAA—is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention." *Id.*

Given the record in this case, the Court finds the ALJ failed to support his finding that Plaintiff's substance use is material with evidence that is fully developed and that establishes that Plaintiff's co-occurring mental disorder would improve to the point of nondisability in the absence of DAA. The ALJ gave limited weight to the opinions of Plaintiff's treating psychiatrist and two treating psychotherapists, who found Plaintiff's impairments predated substance abuse and continued when he was sober, yet gave great weight to a non-treating and non-examining physician that based his decision on only part of the record and that believed further testing was

1  appropriate. As the ALJ's finding is not supported by clear and convincing reasons supported by
2  substantial evidence, remand is appropriate to reevaluate Plaintiff's treating providers' opinions.

### C. Remaining Arguments

Plaintiff's remaining arguments rely heavily on his argument that the ALJ erred in assessing the medical opinions in this case. Because the Court agrees that the ALJ erred in assessing the medical opinions, and because the ALJ's listings and RFC determinations were necessarily predicated on assessment of the medical opinions, the Court remands on these issues as well. On remand, the ALJ must analyze whether Plaintiff meets a listing and evaluate his RFC based on re-assessment of the medical opinions.

### D. Remedy

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks, "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id.* (citations and internal quotation marks omitted). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101).

It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Id.* at 1047. Further, even when all three criteria are met, whether to make a direct award of benefits or remand for

further proceedings is within the district court's discretion. *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1101). While all three credit-as-true factors may be met, the record as a whole could still leave doubts as to whether the claimant is actually disabled. *Trevizo v. Berryhill*, 871 F.3d 664, 683 n.11 (9th Cir. 2017). In such instances, remand for further development of the record is warranted. *Id.*

Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled. Accordingly, remand for further proceedings is appropriate.

## VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision. This matter is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: January 21, 2022

THOMAS S. HIXSON
United States Magistrate Judge

13